# United States District Court
# Central District of California

| | |
|---|---|
| JOHN GONZALEZ,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CITY OF EL MONTE, et al.<br>　　　　Defendants. | Case No. 2:18-cv-02346-ODW (GJSx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [25]** |

## I. INTRODUCTION

Plaintiff, John Gonzalez ("Gonzalez"), brings this action against Defendants City of El Monte (the "City"), and Police Officers Michael Balzano ("Balzano"), Al Hernandez ("Hernandez"), Carlos Tello ("Tello"), David Reynoso ("Reynoso"), Miriam Cuevas ("Cuevas"),[1] and DOES 1 through 10. Gonzalez alleges various claims pursuant to 42 U.S.C. § 1983 and supplemental state law claims. Gonzales alleges that he was unlawfully searched and that the Defendant Officers used excessive force to detain him.

Pending before the Court is Defendants' Motion for Summary Judgment ("Motion"). (Mot., ECF No. 25.) For the following reasons, the Court **GRANTS IN PART and DENIES IN PART** Defendants' Motion.[2]

---

[1] The Court granted Defendants' stipulation to dismiss Miriam Cuevas. (ECF No. 24.).

[2] After considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

## II. BACKGROUND

### C. Police Incident

On July 30, 2017, Balzano, Tello, Hernandez, and Cuevas (collectively, "Officers") were dispatched to Plaintiff's residence for a potential domestic violence incident. (*See* Defs.' Separate Statement of Uncontroverted Facts ("DSUF") 1, ECF No. 25-1.) The dispatch indicated a male was punching a female and pushing her into the bushes. (DSUF 1.) Plaintiff matched the description of the assailant given in the dispatch call. (DSUF 1.) The Officers found the door to Plaintiff's home open and asked Plaintiff's female companion, Valdez, to step outside. (*See* DSUF 3.) Defendants state Plaintiff attempted to follow Valdez out the door. (DSUF 4.) Plaintiff states he did not. (Pl.'s Statement of Disputed Facts ("PSDF") 3, ECF No. 27.) Balzano entered the residence and instructed Plaintiff to turn around so Balzano could pat him down for weapons. (DSUF 4.) Plaintiff turned around, but the parties dispute whether or not he placed his hands behind his back. (*See* DSUF 4; PSDF 4.) Balzano believed he needed to execute a pat down search because of the nature of the call and the fact Plaintiff was agitated, sweating, and wearing baggy pants capable of concealing a weapon. (DSUF 5.) The parties dispute whether Plaintiff smelled of alcohol at the time. (PSDF 5.)

Defendants state that once Balzano tried to pull Plaintiff's hands behind his back, Plaintiff pulled away, took a fighting stance, and balled his hands into fists. (DSUF 6–7.) Plaintiff disputes these actions. (PSDF 6–7.) At some point Hernandez drew his TASER, pointed it at Plaintiff, and told him to place his hands behind his back, and if he did not, he would be "tased." (DSUF 8.) After Hernandez pointed the TASER at Plaintiff, Plaintiff began to turn back around. (DSUF 8.) Balzano attempted to place Plaintiff's hands behind his back. (DSUF 8.) Defendants assert that Plaintiff pulled away again. (DSUF 8.) Plaintiff asserts that he did not pull away. (PSDF 8.)

Subsequently, Balzano wrapped his right arm around Plaintiff's head, neck, and shoulder area and used his body weight and momentum to bring Plaintiff to the floor. (DSUF 9.) Parties dispute whether Balzano's conduct constituted a "carotid hold." (*See* DSUF 9; PSDF 9.) Plaintiff asserts he almost lost consciousness due to Balzano's choking action. (PSDF 9.) Hernandez then stepped over Balzano and put his weight on top of Plaintiff's torso and leg area to gain physical control of Plaintiff. (DSUF 10.)

Defendants assert that Plaintiff tensed up his body, resisted placing his arms behind his back, and tucked his arms in. (DSUF 11.) Plaintiff asserts he did not tense up and was compliant. (PSDF 11.) In an effort to restrain Plaintiff, Balzano punched Plaintiff, but the parties dispute the extent of the punching. (DSUF 12.) Defendants contend Balzano punched Plaintiff twice as he continued to scream and resist.

(DSUF 12.) Plaintiff asserts Balzano punched him four to six times in the right side of the face, six times on the left side, and twice in the back of his head. (PSDF 12.) After Balzano's punches, Hernandez applied his TASER on Plaintiff's torso and right leg using the "probe mode" and the "drive-stun mode." (DSUF 13.) Defendants assert that Plaintiff continued to stiffen his muscles and kicked his legs. (DSUF 13.) After Hernandez felt his initial efforts were unsuccessful, he "completed the circuit" on the second execution at which point Plaintiff's muscles relaxed. (DSUF 13.) Plaintiff maintains that he did not tense his muscles and could not have kicked his leg because he wears a prosthesis. (PSDF 13.) Plaintiff asserts that Hernandez discharged his TASER one to two seconds after Balzano brought Plaintiff to the floor. (PSDF 10.)

The entire incident lasted twenty to thirty seconds before Plaintiff was handcuffed. (DSUF 15.) After he was handcuffed, Plaintiff alleges Balzano stepped on his right wrist. (Pl.'s Additional Undisputed Facts ("PAUF") 23, ECF No. 27.) Plaintiff also alleges that inside the patrol vehicle, Defendants denied Plaintiff's request to loosen the handcuffs. (PAUF 24.) Plaintiff contends that, due to the incident, he suffered injuries including permanent optic nerve damage to the right eye, a fracture in his right wrist, and bruising and bleeding in his right eye. (PAUF 25.)

**D. Police Training**

Hernandez received TASER training at the police academy. (DSUF 14.) The TASER guideline calls for a target range of five to fifteen feet. (Decl. of Cameron Sehat ("Sehat Decl.") Exh. D ("Hernandez Dep."), 9:11–10:22, ECF No. 26-4.) At training, Hernandez deployed the darts at a distance greater than 10 feet. (PAUF 19.) During the altercation with Plaintiff, Hernandez deployed the darts with the TASER pressed up against Plaintiff's skin and punctured his skin. (PAUF 20.)

Both Balzano and Hernandez have been trained in de-escalation measures and taught to avoid instigating physical confrontation by using communication tools. (PAUF 7.) Additionally, Balzano learned at training that punching an individual in the face or head area could cause a lethal injury. (PAUF 12.)

### E. Plaintiff's Complaint

Plaintiff subsequently filed the present lawsuit asserting seven claims for relief: (1) violation of § 1983 for unreasonable search and seizure and use of excessive force; (2) *Monell* claim pursuant to § 1983; (3) violation of § 1983 for failure to train and supervise; (4) negligent hiring, training, and supervision; (5) battery; (6) intentional infliction of emotional distress; and (7) negligence. (*See generally* Compl., ECF No. 1.) Defendants move for summary judgment as to all claims. (Mot. 2.)

### III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out "the material facts as to which the moving party contends there is no genuine dispute." C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that material facts as

claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. L.R. 56-3.

## IV. DISCUSSION

Defendants move for summary judgment on each of Plaintiff's claims on the grounds that Plaintiff's conduct during discovery warrants barring Plaintiff from testimfying. Without that testimony Plaintiff would have no evidence to dispute Defendants' material facts. Alternatively, Defendants claim that the material facts are undisputed and their (Defendant Officers') conduct was reasonable under the circumstance. If the Court were to find a material dispute, Defendants claim the officers are entitled to qualified immunity and secondly, Plaintiff's plea in the underlying criminal case bars his civil claim. The Court addresses each argument in turn.

Before addressing the merits of Defendants' Motion, the Court addresses three preliminary matters: (1) Defendants' objection to Plaintiff's deposition testimony (Mot. 9); (2) Defendants' request to exclude Plaintiff's witnesses as a sanction for untimely disclosure (Mot. 12); and (3) Defendants' objections to Plaintiff's evidence (*See* Defs.' Objections to Pl.'s Evidence, ECF No. 30).

**Discovery and Evidentiary Matters**

   5. *Objection to Plaintiff's Deposition Testimony*

Defendants claim that Plaintiff should be precluded from providing testimony at trial or submitting a declaration in opposition to this Motion because he improperly invoked his Fifth Amendment privilege against self-incrimination. (Mot. 9.)

The Fifth Amendment states, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The privilege extends to "answers that would . . . support a conviction . . . [or] furnish a link in the chain of evidence needed to prosecute the claimant." *Hoffman v. United States*, 341 U.S. 479, 486 (1951). Individuals invoking the privilege should have "reasonable cause to apprehend danger from a direct answer." *Id.* The Court may determine whether the silence was justified or if the individual appears to have been clearly mistaken. *Id*.

Trial courts may prohibit parties from invoking the privilege against self-incrimination during a deposition and later testifying on the same subject matter at trial to promote full and equal discovery and prevent surprise, prejudice, and perjury. *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 910 (9th Cir. 2008). "However, 'the competing interests of the party asserting the privilege, and the party against whom the privilege is invoked must be carefully balanced,' and 'the detriment to the party asserting it should be no more than is necessary to prevent unfair and

5

unnecessary prejudice to the other side.'" *Id.* (quoting *Doe ex rel. Rudy–Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000)).

On October 12, 2018, Defendants deposed Plaintiff while Plaintiff's criminal case was still pending. (Opp'n. to Mot. ("Opp'n") 13, ECF No. 28.) Though Plaintiff answered questions at his deposition regarding his education, living situation, and lack of employment, he did not answer questions about the incident with the police. (Mot. 12.) Defendants claim that Plaintiff lacked reasonable cause to believe that his answers might lead to self-incrimination. (Mot. 10.) Plaintiff had been arrested for and charged with resisting arrest. However, answers to questions regarding who was present at the scene or in his home could provide information about witnesses furnishing a link in the chain of evidence required to prosecute the case against him. Furthermore, answering questions about his injuries and damages would require him to discuss how or why those injuries occurred, also possibly furnishing a link in the chain. Thus, Plaintiff was well within his right to invoke the privilege against self-incrimination.

Here, Defendants argue that Plaintiff's invocation of his fifth amendment right barred them a meaningful opportunity to conduct discovery. (Mot. 9–12.) Defendants assert that, because of this hardship, Plaintiff should be prohibited from testifying at trial, and any declaration by Plaintiff in opposition of this Motion should not be considered. (Mot. 9.) However, Defendants do not indicate how they were prejudiced. Again, the criminal case was still pending against Plinatiff at the time of his deposition. In fact, Plaintiff offered to stay the civil case until the criminal case was resolved. (Opp'n. 12.) Further, Defendants could have propounded other discovery mechanisms in the period between the final determination of the criminal proceeding and the end of the civil discovery period. Additionally, Defendants could have requested an extension of the discovery cut-off. Given the posture of the case vis-a-vis the criminal matter and the fact that the pendency of the criminal matter would of necessity hinder full discovery in the civil case, it is almost a certainty that a request to extend the discovery cut-off would have been granted. . As Defendants chose not to accept plaintiff's offer to stay the instant matter, or employ other discovery mechanisms available under the Federal Rules of Civil Procedure, the Court sees no unavoidable hardship to the Defendants. Thus, the Court denies Defendants' request to strike Plaintiff's deposition testimony or declaration and bar him from testifying at trial.

6

### 6. *Request to Exclude Plaintiff's Witnesses for Untimely Disclosure*

Defendants next assert that Plaintiff failed to make Initial Disclosures as required by Federal Rule of Civil Procedure ("Rule") 26(a) and instead provided the names of his witnesses on the discovery deadline. As a remedy, Defendants seek to exclude Plaintiff's witnesses. Rule 37(c)(1) automatically excludes any evidence not properly disclosed under Rule 26(a). *Yeti by Molly v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). However, exclusion under Rule 37(c)(1) is not appropriate if the failure to disclose was substantially justified or harmless. *Id.*

Here, on July 23, 2018, Plaintiff made its initial disclosures required by Rule 26 (a)(1).[3] (*See* Sehat Decl. Exh. B, ECF No. 26-2.) Thereafter, the Court issued its Scheduling Order, setting the deadline for the percipient witness and fact discovery cutoff at June 3, 2019. (Scheduling Order.) On June 3, 2019, Plaintiff provided a document titled "supplemental disclosures" with the names of his witnesses. (Mot. 16.) Since Plaintiff provided the required discovery before the Court-imposed deadline, Plaintiff's disclosure was timely. Because Plaintiff disclosed all information required under the rules by the deadline in the Court's Scheduling and Case Management Order ("Scheduling Order"), the Defendants' request to exclude Plaintiff's witnesses on the basis of tardy disclosure is denied. (Scheduling Order, ECF No. 22.)

As noted, Defendants could have requested to enlarge the discovery period if they wished to propound additional discovery based on Plaintiff's disclosure. Furthermore, Defendants, having knowledge of the deadlines in the Scheduling Order,

---

[3] Procedural rules require parties to make initial disclosures that include:
 (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
 (ii) a copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;
 (iii) a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and
 (iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.
 Fed. R. Civ. P. 26 (a)(1).

chose to retain an expert before the discovery deadline and therefore, cannot refer to their decision as a basis of hardship and prejudice. (Mot. 17.) Defendants' requested sanction lacks merit and is denied.

   7.   *Defendants' Objections to Plaintiff's Evidence*

The Court does not rely on any of the evidence under objection and thus, the objections are moot. *See Smith v. Cty. of Humbolt*, 240 F. Supp. 2d 1109, 1115 (N.D. Cal. 2003). To the extent that this Order relies on any other evidence without discussion of the objection, the relevant objections are overruled. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1118, 1122 (E.D. Cal. 2006) (concluding that "the court will proceed [only] with any necessary rulings on defendants' evidentiary objections").

**E. Qualified Immunity**

Defendants assert they are entitled to qualified immunity. (Mot. 24.) "The doctrine of qualified immunity insulates government agents against personal liability for money damages for actions taken in good faith pursuant to their discretionary authority." *Deorle v. Rutherford*, 272 F.3d 1272, 1285 (9th Cir. 2001). Qualified immunity requires a two-pronged analysis: (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right" and (2) "whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citations and quotation marks omitted); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). A clearly established constitutional right "must be particularized to the facts of the case." *Davis v. United States*, 854 F.3d 594, 599 (9th Cir. 2017) (internal quotation marks omitted). "[T]he focus is on whether the officer had fair notice" that his actions violated a constitutional right and were unlawful. *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). Where the constitutional right violated was clearly established, the officer was on notice that his conduct was unreasonable, and he is not entitled to qualified immunity. *A.K.H. ex rel. Landeros v. City of Tustin*, 837 F.3d 1005, 1013 (9th Cir. 2016).

A court may address either prong of the qualified immunity analysis first. *Pearson*, 555 U.S. at 236. If the answer to either prong is no, the court need not continue with the analysis, as the officer is entitled to qualified immunity (either because he has violated no constitutional right, or because the right was not clearly established at the time). *See Wilkins v. City of Oakland*, 350 F.3d 949, 954–55 (9th Cir. 2003).

As to each claim, the Court will first address whether the facts support the alleged constitutional violation, then turn to whether the right at issue was clearly established at the time of Defendants' alleged misconduct. In its discussion, the Court

considers Defendants' arguments based on the undisputed facts and construes all disputed facts in the light most favorable to Plaintiff.

**F. Section 1983 Claims**

To prevail under 42 U.S.C. § 1983, a plaintiff must prove: (1) he or she was "deprived of a right secured by the Constitution or laws of the United States," and (2) "the alleged deprivation was committed under color of state law." *Marsh v. Cty. of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

### a. Excessive Force, 42 U.S.C. § 1983

Plaintiff alleges that Defendants used excessive force in violation of 42 U.S.C. § 1983 during the arrest of Plaintiff.

*Violation of Constitutional Rights*

Excessive use of force incident to a search or seizure is subject to the Fourth Amendment's objective reasonableness requirement. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Ninth Circuit analyzes excessive force by first "considering the nature and quality of the alleged intrusion" and then considering "the governmental interests at stake." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (citing *Deorle*, 272 F.3d at 1279–80). Courts consider "(1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id*. "[A]n officer'[s] 'provocative conduct' can trigger an individual's 'limited right to offer reasonable resistance.'" *Young v. Cty. of Los Angeles*, 655 F.3d 1156, 1164 (9th Cir. 2011) (quoting *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921 (9th Cir. 2001)). "[T]here are no per se rules in the Fourth Amendment excessive force context; rather, courts must still slosh [their] way through the factbound morass of reasonableness." *Mattos*, 661 F.3d at 441 (alteration in original) (internal quotation marks omitted) (quoting *Scott*, 550 U.S. at 383).

The reasonableness of the force used is "judged from the perspective of a reasonable officer on the scene." *Graham*, 490 U.S. at 396. An officer cannot simply

claim that he "fear[ed] for his safety or the safety of others . . . there must be objective factors to justify such a concern." *Young*, 655 F.3d at 1163. Thus, excessive force claims will usually present jury questions: "[w]here the objective reasonableness of an officer's conduct turns on disputed issues of material fact, it is a question of fact best resolved by a jury; only in the absence of material disputes is it a pure question of law." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) (internal quotation marks omitted) (quoting *Wilkins*, 350 F.3d at 955 and *Scott*, 550 U.S. at 381 n.8). As such, "summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Id.* at 1125 (quoting *Santos v. Gates,* 287 F.3d 846, 853 (9th Cir. 2002)).

Here, Defendants contend that no genuine issues of material fact exist because Plaintiff's testimony and that of his witnesses should be excluded. However, as the Court denied Defendants' request to exclude testimony from Plaintiff and his witnesses, genuine disputes of material facts remain. (*See generally*, PSDF; PAUF.) For example, though Defendants assert they punched Plaintiff twice to secure control as he resisted arrest and therefore acted reasonably under the circumstances, Plaintiff asserts that Defendants punched him eighteen to twenty times even though he was unarmed and not resisting. Furthermore, Plaintiff maintains that despite following Defendants' instructions to turn around and place his hands behind his back, he was placed in a chokehold and tackled. (DSUF 9.) When Defendants failed to restrain Plaintiff, Hernandez executed two cycles of the TASER. (DSUF 13.) Given the disputed facts, a reasonable jury could find the force used to be excessive.

Furthermore, a reasonable jury could find that Plaintiff posed no immediate threat to Defendants as there was no evidence of physical violence between Plaintiff and his partner and he bore no weapon. (PAUF 2.) Balzano asserts that he believed Plaintiff was a threat because he was agitated, sweating, wearing baggy pants capable of concealing a weapon, and kept one of his hands under his body potentially reaching

for a weapon. (DSUF 5.) However, Plaintiff maintains his hands were visible to Defendants during the entire altercation. (PAUF 8, 22.)

Though Plaintiff maintains he did not resist being handcuffed, even if he had, a jury may find his actions reasonable. Defendants' conduct as described by Plaintiff qualifies as sufficiently provocative to trigger the limited right of resistance and a jury could conclude that stiffening muscles in anticipation of punches was a reasonable response to Defendants' actions. *See Blankenhorn v. City of Orange*, 485 F.3d at 479–80. For example, in *Blankenhorn*, the court found a limited right to resistance applied where "arresting officers gave no warning that they were going to arrest [a suspect who refused an officer's order to kneel down to be handcuffed] before gang-tackling him and later applying hobble restraints." *Id*. The court observed that "[t]he lack of forewarning, the swiftness, and the violence with which the defendant officers threw themselves upon Blankenhorn could reasonably be considered 'provocative,' triggering Blankenhorn's limited right to reasonable resistance and thus making their later use of the hobble restraints unreasonable." *Id*.

Here there is no allegation that Plaintiff struck or attempted to strike either officer. Thus, construing all disputes in favor of Plaintiff, a reasonable jury could find that if Plaintiff did not tuck his hands beneath his body, he posed no immediate threat and Defendants' conduct was excessive.

Additionally, "police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000). An officer who fails to intervene when a fellow officer uses excessive force would be responsible for violating the Fourth Amendment. *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994) *aff'd in part, rev'd in part*, 518 U.S. 81 (1996). Officers who breach this duty could be held liable only if they had a "realistic opportunity" to intercede. *Cunningham*, 229 F.3d at 1290.

Here, viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that each of the officers had a realistic opportunity and failed to intervene when Hernandez or Balzano used excessive force on Plaintiff.

5. *Clearly Established Rights*

As a reasonable jury could find that Defendants used excessive force, the next issue is "whether the right was clearly established" at the time. *Saucier*, 533 U.S. at 201. This requirement "does not mean that the very action at issue must have been held unlawful before qualified immunity is shed." *Wall v. Cty. of Orange*, 364 F.3d 1107, 1111 (9th Cir. 2004). Officers "can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). The issue is whether, at the time of the encounter, "the state of the law . . . gave [the defendants] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Id.*; *see also Boyd v. Benton Cty.*, 374 F.3d 773, 781 (9th Cir. 2004) (alteration in original) (internal quotation marks omitted) ("In excessive force cases, the inquiry remains whether, under the circumstances, a reasonable officer would have had fair notice that the force employed was unlawful, and [whether] any mistake to the contrary would have been unreasonable.").

Here, the law was clearly established at the time of the incident that a police officer's use of force on a suspect who does not pose an immediate threat is excessive and impermissible. *See Jaramillo v. City of San Mateo*, 76 F. Supp. 3d 905, 923 (N.D. Cal. 2014) (discussing that a jury could find the force unjustified where the plaintiff's hands were showing but the officer grabbed him, struck him, threw him on the ground, stepped on his neck, got on top of him, and broke his ribs with his knees). The law is also clearly established that an officer who fails to intervene when his fellow officer uses excessive force violates the Fourth Amendment. *Koon*, 34 F.3d at 1447 n.25.

Accordingly, the Court concludes the Officers are not entitled to qualified immunity and a reasonable jury could find use of force excessive. Thus, the Court

**DENIES** Defendants' Motion as to qualified immunity and Plaintiff's claim for excessive use of force in violation of 42 U.S.C. § 1983.

### a. State Law Claims

Defendants also move for summary judgment as to Plaintiff's state-law claims for Negligent Hiring, Training and Supervision, Battery, Intentional Infliction of Emotional Distress, and Negligence. (*See* Mot.)

*Negligent Hiring, Training, and Supervision*

Plaintiff abandons this claim. (Opp'n 23.) Courts should grant summary judgment on claims that parties raise but abandon at summary judgment. *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1026 (9th Cir. 2009) (affirming district court's grant of summary judgment on claims a party fails to address in his opposition to motion for summary judgment). Thus, the Court **GRANTS** Defendants' Motion as to this claim.

### 5. *Battery*

"A peace officer who uses unreasonable or excessive force in making a lawful arrest or detention commits a battery upon the person being arrested or detained as to such excessive force." *Johnson v. Bay Area Rapid Transit*, 790 F. Supp. 2d 1034, 1074 (N.D. Cal. 2011) *aff'd in part, vacated in part, rev'd in part on other grounds sub nom. Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159 (9th Cir. 2013). As indicated above, issues of material fact exist as to whether Defendants used unreasonable or excessive force against Plaintiff. Accordingly, the Court **DENIES** Defendants' Motion as to Plaintiff's battery claim.

### 6. *Intentional Infliction of Emotional Distress*

To establish a prima facie claim for IIED, Gonzalez must show: (1) extreme and outrageous conduct by Defendants; (2) intent to cause, or reckless disregard of the probability of causing, emotional distress; (3) Plaintiff's severe emotional suffering; and (4) actual and proximate causation of Plaintiff's emotional distress by Defendants' outrageous conduct. *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009). Apart from his status as a cancer survivor, Plaintiff offers no evidence of severe emotional distress resulting from Defendants' conduct. (Opp'n 21.) Thus, the Court **GRANTS** summary judgment as to this claim.

### 7. *Negligence*

Peace officers have a duty to act reasonably when using force, but the reasonableness of the officer's actions must be determined in light of the totality of the circumstances. *Hayes v. Cty. of San Diego*, 57 Cal. 4th 622, 629 (2013). To prevail on a negligence claim, a plaintiff must show that the officers "acted unreasonably and that the unreasonable behavior harmed" the plaintiff. *Price v. Cty. of San Diego*, 990 F. Supp. 1230, 1245 (S.D. Cal. 1998); *see also Ortega v. City of Oakland*, No. C07-02659 JCS, 2008 WL 4532550, at *14 (N.D. Cal. Oct. 8, 2008). As discussed above, a reasonable jury could find that Defendants acted unreasonably in their use of force

against Plaintiff, causing Plaintiff harm. Accordingly, the Court **DENIES** Defendants' Motion as to Plaintiff's negligence claim.

### a. *Monell* Claim

Defendants also move for summary judgment as to Plaintiff's claims against the City for municipal liability and against the City's Chief of Police for failure to investigate police misconduct and failure to train and supervise the officers. (Opp'n 20–21.)

"[T]o establish municipal liability, a plaintiff must show that a 'policy or custom' led to the plaintiff's injury." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016) (en banc) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)), *cert. denied sub nom. Los Angeles Cty., Cal. v. Castro*, 137 S. Ct. 831 (2017). Local government entities may be liable pursuant to § 1983 only for a deprivation of a right resulting from an official policy or custom. *Monell*, 436 U.S. at 694. To establish liability under *Monell*, a plaintiff must prove: "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (alteration in original) (quoting *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)). Even if there was no explicit policy, a plaintiff must establish liability by showing that there was a permanent and well-settled practice that gave rise to the alleged constitutional violation. *See City of St. Louis v. Praprotinik*, 485 U.S. 112, 127 (1988); *Navarro v. Block*, 72 F.3d 712, 714–15 (9th Cir. 1996). There is not evidence to establish the existence of a policy or well-settled practice which resulted in the constitutional violation. Therefore summary judgment on the *Monell* claim is **GRANTED**.

4. *Failure to Investigate Police Wrongdoing*

Plaintiff alleges the City and Reynoso, the City's Chief of Police, knowingly maintained or permitted an official policy or custom of permitting occurrences of the type alleged in the complaint such as failing to investigate or discipline police officers known to have repeatedly violated the constitutional rights of the public. (Compl. ¶ 37.) Defendants move for summary judgment on this claim because Plaintiff failed to establish any policy, practice, or custom that would expose the City to liability. (Mot. 29.) Indeed, Plaintiff fails to identify any policy, practice, or custom in his opposition to the Motion or his statement of disputed facts. (*See* Opp'n; PSDF.) Thus, the Court **GRANTS** summary judgment as to this claim.

### 5. *Failure to Train*

Similarly, summary judgment is appropriate as to Plaintiff's failure to train claim. Plaintiff fails to identify any municipal policy or custom that resulted in the deprivation of Plaintiff's constitutional rights. Instead, Plaintiff offers evidence that Hernandez had vision impairment during the incident such that he needed glasses, and the City was aware of the impairment but continued to employ the officer. (PAUF 21; Hernandez Dep. 60:9–25; Opp'n 21.) This is not sufficient to establish this claim.

Additionally, Plaintiff has failed to create a material dispute of fact regarding his claim against the City and Reynoso for failure to train and supervise. A municipality's failure to train may create § 1983 liability where the "failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006). To establish a failure to train, a plaintiff must show: (1) he was deprived of a constitutional right; (2) the municipality had a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons with whom [its police officers] are likely to come into contact"; and (3) his constitutional injury would have been avoided had the municipality properly trained those officers. *Blankenhorn*, 485 F.3d at 484 (alterations in original and internal quotation marks omitted).

Here, Plaintiff contends that because Balzano did not follow the de-escalation measures as taught in training during his interaction with Plaintiff, the training was inadequate. Plaintiff cannot establish that the City's training method was the cause of the alleged constitutional violation simply because Defendant Balzano failed to adhere to the training method. Furthermore, Plaintiff fails to demonstrate that the training policy amounts to deliberate indifference as the City had a policy in place intended to

de-escalate situations to avoid or minimize the need to use force. Accordingly, the Court **GRANTS** Defendants' Motion as to Plaintiff's *Monell* claims.

**E. Criminal Conviction Invalidating Civil Claims**

Finally, Defendants move for summary judgment on the grounds that Plaintiff is barred from bringing a civil suit if a civil judgment would invalidate the criminal conviction. The Supreme Court in *Heck v. Humphrey* stated that "[i]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal . . . ." 512 U.S. 477, 486 (1994). However, where a civil suit does not challenge the legality of a conviction, the civil suit may continue. *Hooper v. Cty. of San Diego*, 629 F.3d 1127, 1133 (9th Cir. 2011) (discussing that resisting arrest was based on arrestee's actions in jerking her hand away from a police officer, but excessive force claim was based on being bitten by a dog). Here, Plaintiff's civil suit does not render his conviction invalid as the conviction is based on Plaintiff's initial resistance to being handcuffed while the civil suit is based on Defendant's subsequent use of punches and the TASER. (Opp'n 27.) Thus, summary judgment is **DENIED** on this basis.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART and DENIES IN PART** Defendants' Motion. (ECF No. 25.) Specifically, the Court **GRANTS** Defendants' Motion as to Plaintiff's *Monell* claims, Negligent Hiring, Training, and Supervising state-law claim, and Intentional Infliction of Emotional Distress state-law claim, and **DENIES** Defendants' Motion as to all other claims.

Accordingly, summary judgment is **GRANTED** as to Plaintiff's second, third, fourth, and sixth claims for relief, and all other claims will proceed.

**IT IS SO ORDERED.**

October 3, 2019



_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**